## First National Bank of Chattanooga, Appellant, vs. W. J. Willingham, Appellee.

ATTACHMENT — BEFORE WHAT OFFICER AFFIDAVIT FOR COULD FORMERLY BE MADE.

Under the provisions of Chapter 998 laws, approved December 20th, 1859, in force up to and until the adoption, in 1892, of our Revised Statutes, no attachment could properly issue unless the party applying for same, his agent or attorney, first made an affidavit, in compliance with the statute, before *the clerk of the Circuit Court*, or before *a justice of the peace.* That statute expressly confined the making of the prerequisite affidavit before those two officials, and an affidavit sworn to before any other official did not authorize the issuance of the writ.

Appeal from the Circuit Court for Polk county.

The facts in the case are stated in the opinion of the court.

*Thomas McDermott, Hanson & Crozier*, for Appellant.

*J. W. Brady, Frank Clark*, for Appellee.

Taylor, J.:

On the 2d day of December, 1890, the appellant instituted its suit by attachment in the Circuit Court of Polk county against the appellee, causing the writ to be levied upon divers parcels of land in that county belonging to the appellee.

The defendant (appellee here) before pleading moved the court to dissolve the attachment and to dismiss the suit upon divers grounds, the first of which was: "Because no sufficient affidavit to warrant the issuance of a writ of attachment has been filed in said cause;" and the third being: "Because said affidavit is not sworn

to before the clerk of said court or a justice of the peace, as required by law." This motion was granted, the court dissolving the attachment and dismissing the suit, and from this judgment the appeal is taken.

The affidavit upon which the writ of attachment was issued was sworn to in the State of Tennessee before a notary public, and the question presented is, did an affidavit sworn to before such an officer legally authorize the issuance of the writ? We think not. By the provisions of Chapter 87, act approved February 12th, 1832, no other official than a justice of the peace was authorized to grant writs of attachment, and when granted by them, were made returnable to whatever court had jurisdiction over the cause; and in cases where the debt was already due no affidavit was required as a prerequisite to the writ, but the plaintiff was simply required to "*make complaint*" to the justice of the peace, basing his complaint upon the statutory grounds. When the plaintiff's debt was *not due,* however, and he had sufficient grounds to suspect that his debtor would remove out of the territory before his debt became payable, then, in order to procure an attachment, he was required to make an affidavit of the facts *before a magistrate,* who issued the writ, making it returnable to whatever court had jurisdiction over the same. Thus stood the law until the approval of Chapter 741, on February 15th, 1834, by the provisions of which the authority to *grant the writ* was extended to the clerks of the superior and county courts, and whenever the writ was issued by a clerk of court or a justice of the peace, they could make it returnable only to their own respective courts; and, by section 3 of this last mentioned act, it was provided that the writ should issue in no case unless the party applying

for same, or his agent or attorney should first make oath in writing that the amount of his debt or sum demanded was actually due, etc. Subsequently Chapter 998 was approved on December 20th, 1859, by the first section of which it was provided that from and after the passage of this act, writs of attachment, now authorized by statutes of this State to be issued where the debt or demand is due, shall in no case be issued, unless the party applying for the same, or his agent or attorney, shall first make out in writing, *before a justice of the peace* or *Clerk of the Circuit Court*, as is now provided by law, that the amount of the debt or sum demanded is actually due," etc. Here we have an express provision of law prohibiting the issuance of any writ of attachment, in cases where the debt sued for was due, unless the party applying for same, or his agent or attorney, should first make an affidavit *before the Clerk of the Circuit Court* or *before a justice of the peace.* This emphatic language of the statute we can not ignore, but must give to it the full weight, at least, of its ordinary import. It was contended for the appellant in the argument that the use of the words, "as is now provided by law," immediately following the requirement in this statute that the affidavit should be made before the officers named, shows upon its face that the Legislature did not *intend* to confine the making of the affidavit before the two officials named, but that those officials were named in the act only because the Legislature mistakenly supposed that the law then already extant so confined it to those two officers. The contention possesses some force, but we can not agree with it, because it is our duty, if possible, to give effect to all the provisions of a statute when called upon to construe it. It requires no effort or strained construction to give to this statute the effect plainly expressed

by its language, that attachments must issue only upon affidavits made before clerks of Circuit Courts or before justices of the peace, but to give it the effect contended for does violence to its language, and would arbitrarily strip it of a material feature deliberately incorporated into it by the law-makers. And, besides this, from the pre-existing status of the law at the time of its enactment, we are not prepared to say otherwise than that such pre-existing law on the subject did contemplate that the prerequisite affidavit should be made only before the two officials clothed with authority to issue the writ, and that the words, "as is now provided by law," was a correct legislative interpretation and construction of the then existing law. The text-writers, Drake on Attachment, sec. 90d, and Waples on Attachment, p. 84, both assert that the affidavit may be sworn to before any officer authorized to administer oaths, and both of them cite in support of this unqualified assertion the case of Wright vs. Smith, 66 Ala. 545. Turning to that case, however, we find that it construed a statute that did not specify any official before whom these affidavits should be made, and the decision plainly intimates that where a statute expressly confines the making of the affidavit before the officer authorized to issue the writ, then it would have to be made before the officer specified. The provisions of statutes of this kind, in derogation of the common law, and imposing so harsh a remedy, have always been required to be complied with strictly. The law, at the time this writ was issued, prohibited the issuance thereof unless an affidavit was first filed, sworn to before a clerk of the Circuit Court or before a justice of the peace; the affidavit upon which it issued was sworn to before a notary public in another State; its issuance was illegal and unauthorized. Whether

our courts here could, prior to the adoption of the Revised Statutes, recognize any affidavit sworn to before a notary public in another State, as a predicate for the issuance of any writ, or for any other purpose, it is unnecessary now to decide, since, from the conclusion we have reached, the affidavit for the writ in this case would have been equally ineffectual and insufficient had it been sworn to here in this jurisdiction before a notary public or before any other official than a clerk of the Circuit Court or a justice of the peace. The order and judgment appealed from was proper, and is, therefore, affirmed.